**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald C. Trussell<br><br>    Plaintiff,<br><br>v.<br><br>Clark Hills, an individual and as Trustee for GLOBAL TRUST DEPOSITORY, and Does<br><br>    Defendants. | No. CV-12-02328-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's *ex parte* Complaint and Application for a Temporary Restraining Order ("TRO") against Defendants. (Doc. 1).

**I.    MATERIAL FACTS**

Plaintiff claims he purchased four Venezuelan Bondagro Bonds ("Bonds") on an unspecified date in the early 1990's. In November 2008, Plaintiff alleges he turned the Bonds over to Defendant Clark Hills, President of Citi Secured Deposit, in order for Defendant Hills to deposit the Bonds in a safe deposit box located at CitiBank. (Doc. 1 at 2); (*See id*. at 10). The Safekeeping Receipt, apparently issued by Citi Secured Deposit, verified that four bonds were deposited with a combined note value of $50,000,000.00. (*Id*. at 10). Plaintiff says no paperwork was exchanged or signed between the parties and no consideration was given when the Bonds were physically turned over to Defendant Hills. (*Id*. at 2). Plaintiff alleges that several weeks after the Bonds were deposited Defendant Hills told Plaintiff that the deposit would cost $4000.00 for Defendant's

services.  (*Id*. at 3).  Plaintiff says he paid this amount.  (*Id*.)  On January 18, 2010, Plaintiff claims Defendants sent a letter to Plaintiff's office in the British Virgin Islands.  (*Id*.)  The letter was allegedly not received by Plaintiff until an unspecified time in 2012.  (*Id*.)  On May 26, 2012, Plaintiff says he received an email from Defendant that informed Plaintiff that Defendant was going to file abandoned property collection rights as of June 1, 2012.  (*Id*.)  That same day, Plaintiff allegedly notified Defendant by email that any debt owed by Plaintiff would be worked out.  (*Id*. at 4).  It is unclear whether Defendant agreed to work the debt out.  It appears that Defendant did not go through with liquidating the Bonds in June because on October 23, 2012, Plaintiff says Defendant emailed Plaintiff again stating that on November 1, 2012, Defendant would auction off the Bonds for the fees Plaintiff owed.  (*Id*.)

Plaintiff is proceeding *pro se* and has filed for a TRO without notice to Defendant, to enjoin Defendant from auctioning off the Bonds and supporting documentation Plaintiff claims Defendant also has.  (*Id*.)  Plaintiff claims Defendant has breached his fiduciary duty.  (*Id*.)  Further, Plaintiff argues a TRO is warranted because Plaintiff will suffer irreparable injury by Defendant auctioning the Bonds and supporting documentation material contained in "3 inch binders".[1]  (*Id*. at 5).  Plaintiff also claims he will suffer additional damages and losses "due to the original document 3 inch binders and additional bonds in the amount of $USD1,15,000,000."[2]  (*Id*.)

## II.   LEGAL STANDARD

Rule 65(b) of the Federal Rules of Civil Procedure governs when a court can issue a TRO.  When a plaintiff asks the court to grant a TRO without giving notice to the

---

[1] It is unclear how many binders Plaintiff alleges Defendant has containing supporting documentation.  Plaintiff does not contend in his statement of facts that "3 inch binders" were turned over to Defendant at any time, nor does the Safekeeping Receipt (Doc. 1 at 10) include information about any supporting documentation held by Defendant or any information about "3 inch binders".

[2] Plaintiff has not claimed that any other bonds were turned over to Defendant so it is unclear what or where these additional bonds are and what amount "$USD1,15,000,000" actually constitutes.

defendant the court may issue the order "only if [] specific facts in [the] complaint clearly show that immediate and irreparable . . . loss . . . will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The circumstances in which a court may issue a TRO without giving notice to the adverse party are extremely limited. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

> The stringent restrictions imposed by . . . Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard had been granted to both sides of a dispute. *Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as necessary to hold a hearing, and no longer.
>
> Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an *ex parte* TRO. For example, an *ex parte* TRO may be appropriate where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for the hearing. . . . .
>
> In cases where notice could have been given to the adverse party, courts have recognized a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action. In the trademark arena, such cases include situations where an alleged infringer is likely to dispose of the infringing goods before the hearing. To justify an *ex parte* proceeding on this latter ground, the applicant must do more than assert that the adverse party would dispose of evidence if given notice. Plaintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for the hearing and must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have a history.

*Id*. (citations and quotations omitted).

The standard for issuing a TRO is the same as that for issuing a preliminary injunction. *See Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc*., 236 F.Supp.2d

1152, 1154 (D.Haw. 2007). In *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), the United States Supreme Court explained the proper standard for issuing a preliminary injunction. The Ninth Circuit Court of Appeals discussed and applied *Winter* in *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009). The Court of Appeal's interpretation of *Winter* confirms that a plaintiff must prove four separate factors to be granted a preliminary injunction or a TRO. The Ninth Circuit held, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns*, 559 F.3d at 1052 (quoting *Winter*, 555 U.S. at 20). The Court now applies this standard to the case at bar and finds Plaintiff has not met the burden required of him.

### III.   ANALYSIS

Even if the Court assumes that Plaintiff is likely to succeed on the merits—a finding this Court is not making in this Order—Plaintiff has failed to carry his burden of demonstrating that he is likely to suffer irreparable harm if the Court does not grant his motion for a TRO.

Harm is irreparable when it cannot be remedied except through injunctive relief. *Designer Skin, LLC v. S & L Vitamins, Inc.*, No. CV 05-3699, 2008 WL 4174882, at *5 (D. Ariz. Sept. 5, 2008); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1210 (C.D. Cal. 2007) (noting how irreparable harm has been defined by different Circuit Courts of Appeals). Economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award. *Cal. Pharmacists Ass'n v. Maxwell Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) (modified on other grounds) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (holding "that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily

against a claim of irreparable harm."). Equitable remedies, such as injunctive relief, are not available if an adequate remedy at law exists. *Id*. Plaintiff's sole claim here is that losing the bond assets and supporting documentation material constitute the irreparable injury. (Doc. 1 at 5). Even if the Court considered the unspecified number of 3 inch binders containing supporting documentation separate unique and irreplaceable personal property, as the Court has explained above, Plaintiff has not claimed that Defendant has in his possession any supporting documentation nor does Plaintiff offer any evidence that this supporting documentation exists. Further, the bond assets are precisely the type of economic assets that can be compensated for by monetary damages after both sides have been heard. If Plaintiff's claim has merit he could be fully compensated for any loss he suffers. Plaintiff has neither claimed nor shown that he will suffer anything other than monetary damages. The Court finds Plaintiff is not at risk for suffering irreparable harm. Accordingly, Plaintiff cannot establish the four factors the Supreme Court has said are required for this Court to grant a TRO.

## IV. CONCLUSION

Base on the foregoing,

**IT IS ORDERED** that Plaintiff's Complaint & Application for a Temporary Restraining Order (Doc. 1) is denied.

Dated this 31st day of October, 2012.

James A. Teilborg
United States District Judge